Francis J. "Casey" Flynn, Jr., #304712
**LAW OFFICE OF FRANCIS J. FLYNN, JR.**
6057 Metropolitan Plz
Los Angeles, CA 90036
Tele: 314-662-2836
Email: casey@lawofficeflynn.com

Shane T. Rowley, Esq.*
Danielle Rowland Lindahl, Esq.*
**ROWLEY LAW PLLC**
50 Main Street, Suite 1000
White Plains, New York 10606
Phone: (914) 400-1920
Fax: (914) 301-3514
Email: srowley@rowleylawpllc.com
        drl@rowleylawpllc.com

* Pro hac vice forthcoming

**COUNSEL FOR PLAINTIFF**

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| BRIAN TAYLOR, derivatively on behalf of SYNOPSYS, INC.,<br><br>            Plaintiffs,<br><br>    v.<br><br>AART J. DE GEUS, SASSINE GHAZI, LUIS BORGEN, MARC N. CASPER, JANICE D. CHAFFIN, BRUCE R. CHIZEN, AJEI GOPAL, MERCEDES JOHNSON, ROBERT G. PAINTER, JEANNINE P. SARGENT, JOHN G. SCHWARZ, ROY VALLEE, RAVI VIJAYARAGHAVAN, SHELAGH GLASER, and SUDHINDRA KANKANWADI,<br><br>            Defendants, | CASE NO. __5:25-cv-10878__<br><br>**DERIVATIVE COMPLAINT FOR DAMAGES FOR:**<br><br>**(1)   BREACH OF FIDUCIARY DUTY (DERIVATIVELY AGAINST THE DIRECTOR DEFENDANTS);**<br><br>**(2)   BREACH OF FIDUCIARY DUTY (DERIVATIVELY AGAINST THE OFFICER** |

- 1 -    PLAINTIFF'S DERIVATIVE COMPLAINT

113936v1

-and-

SYNOPSYS, INC., a Delaware Corporation,

Nominal Defendant.

DEFENDANTS);

**(3) GROSS MISMANAGEMENT (DERIVATIVELY AGAINST ALL DEFENDANTS);**

**(4) WASTE OF CORPORATE ASSETS (DERIVATIVELY AGAINST ALL DEFENDANTS)**

**(5) UNJUST ENRICHMENT (DERIVATIVELY AGAINST THE OFFICER DEFENDANTS)**

**(6) VIOLATION OF SECTION 14(A) OF THE EXCHANGE ACT (DERIVATIVELY AGAINST THE DIRECTOR DEFENDANTS)**

**DEMAND FOR JURY TRIAL**

COMES NOW, Plaintiff Brian Taylor ("Plaintiff"), derivatively on behalf of Synopsys, Inc. ("Synopsys" or the "Company"), brings the following complaint against the Company's board of directors (the "Board") and executive officers for breaches of fiduciary duties, gross mismanagement, waste of corporate assets, unjust enrichment, and violation of Section 14(a) of the Securities Exchange Act of 1934. Except for allegations specifically pertaining to Plaintiff and Plaintiff's own acts, the allegations in the Complaint are based upon information and belief, which include but are not limited to: (i) the Company's public filings with the United States Securities and Exchange Commission (the "SEC"); (ii) pleadings filed in *New England Teamsters Pension Fund v. Synopsys, Inc., et al.* (N.D. Ca. Case 5:25-cv-10201) (the "Securities Action"); (iii) corporate governance documents available on the Company's website; (iv) media reports; and (v) other publicly

available information.

## NATURE OF THE ACTION

1.     This is a stockholder derivative action brought by Plaintiff, a stockholder of Synopsys, on behalf of the Company against the Defendants.  This action alleges breaches of fiduciary duty by the Board and senior executive officers occurring from at least March 14, 2024 to September 9, 2025 (the "Relevant Time Period"). During that time the Defendants (as defined herein) caused or allowed Synopsys to issue or make materially false and misleading statements concerning the Company's financial condition and business operations.

2.     On January 16, 2024, the Company announced that it had entered into an agreement to acquire Ansys, Inc. ("Ansys") for approximately $35 billion (the "Transaction"). Synopsys President and Chief Executive Officer ("CEO"), Defendant Sassine Ghazi claimed that the Acquisition would "deliver a holistic, powerful and seamlessly integrated silicon to systems approach to innovation to help maximize the capabilities of technology R&D teams across a broad range of industries."

3.     On March 14, 2024, Synopsys filed a Form S-4 registration statement for the Transaction with the SEC (the "Registration Statement"). On April 17, 2024, Synopsys filed a prospectus and proxy statement for the Transaction on Form 424B3 with the SEC (the "Prospectus") (the Prospectus and Registration Statement collectively referred to as the "Transaction Documents"). The Transaction Documents stated that Ansys shareholders would receive $197.00 in cash and 0.345 shares of Synopsys common stock in exchange for each share of Ansys common stock that they held.

4.     The Transaction Documents failed to disclose that: (1) the Company's growing emphasis on artificial intelligence ("AI") customers, who require more customization, was weakening its pre-designed semiconductor component business known as Design IP; (2) some of the Company's plans were not likely to achieve

their intended outcomes; (3) the foregoing was materially harming the Company's financial performance; and (4) as a result, the positive statements made about the Company's business, operations, and prospects during the Relevant Time Period were materially misleading.

5.      On September 9, 2025, Synopsys reported its financial results for third quarter 2025. That day, the Company disclosed that its "IP business underperformed expectations" and that revenues for Design IP had declined eight percent year-over-year. Because of this, Defendant Ghazi stated that Synopsys "need[s] to pivot our IP resources and road map to the highest-growth opportunities." On this news, Synopsys' stock price fell by 35.8%, dropping from $604.37 to $387.78 per share on September 10, 2025.

6.      Through this action, Plaintiff seeks to hold the Board and executive officers accountable for making or causing the Company to make false and misleading statements, as well as the inadequate internal controls that allowed the misconduct to occur, in breach of their fiduciary duties to the Company.

## PARTIES

A.    **Plaintiff**

7.      Plaintiff is a current shareholder of Synopsys and has continuously held Synopsys stock during all times relevant hereto, and is committed to retaining Synopsys shares through the pendency of this action to preserve his standing. Plaintiff will adequately and fairly represent the interests of Synopsys and its shareholders in enforcing its rights.

B.    **Nominal Defendant**

8.      Nominal Defendant Synopsys is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at 675 Almanor Avenue in Sunnyville, California. Synopsys common stock trades on the NASDAQ stock exchange under the ticker symbol "SNPS."

C. **Individual Defendants**

9. Defendant Aart J. de Geus is the Executive Chair & Founder of the Company. Defendant de Geus has been a director of the Company since 1986. Previously, Defendant de Geus served as Chief Executive Officer from 1994 to 2023.

10. Sassine Ghazi has served as the CEO of the Company since 2024 and a director of the Company since 2023.

11. Defendant Luis Borgen has been a director of the Company since 2022.

12. Defendant Marc N. Casper served as a director of the Company from 2022 until April 10, 2025.

13. Defendant Janice D. Chaffin has been a director of the Company since 2014.

14. Defendant Bruce R. Chizen has been a director of the Company since 2001.

15. Defendant Ajei Gopal has been a director of the Company since July 17, 2025.

16. Defendant Mercedes Johnson has been a director of the Company since 2017.

17. Defendant Robert G. Painter has been a director of the Company since 2023.

18. Defendant Jeannine P. Sargent has been a director of the Company since 2020.

19. Defendant John G. Schwarz has been a director of the Company since 2007.

20. Defendant Roy Vallee served as a director of the Company from 2003 until April 10, 2025.

PLAINTIFF'S DERIVATIVE COMPLAINT

21.     Defendant Ravi Vijayaraghavan has been a director of the Company since July 17, 2025.

22.     Defendants de Geus, Ghazi, Borgen, Casper, Chaffin, Chizen, Gopal, Johnson, Painter, Sargent, Schwartz, Vallee, and Vijayaraghavan are herein referred to as "Director Defendants."

23.     Defendant Shelagh Glaser served as Chief Financial Officer of the Company during the Relevant Time Period.

24.     Defendant Sudhindra Kankanwadi served as Chief Accounting Officer of the Company during the Relevant Time Period.

25.     Defendants Ghazi, Glaser, and Kankanwadi are herein referred to as "Officer Defendants."

## JURISDICTION AND VENUE

26.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a)(1), and Rule 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9.

27.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

28.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

29.     Venue is proper in this court under 28 U.S.C. § 1391, because Synopsys is headquartered in this District, and a significant amount of the conduct at issue took place and had an effect in this District.

-6-
PLAINTIFF'S DERIVATIVE COMPLAINT

**FURTHER SUBSTANTIVE ALLEGATIONS**

A.    **Company Background**

30.    Synopsys provides software and intellectual property ("IP") for designing advanced silicon semiconductor chips and complex electronic systems. The Company offers solutions for AI, automotive, data centers, and more, allowing companies build advanced processors and connected devices using AI-driven EDA (Electronic Design Automation) tools and pre-designed semiconductor components known as Design IP.

31.    Synopsys operates primarily through two segments: (1) EDA (Electronic Design Automation), which includes software tools and services for designing, simulating, verifying, and analyzing integrated circuits and complex electronic systems; and (2) Design IP, which provides prebuilt semiconductor IP blocks such as interface protocols, embedded processors, security IP, and related subsystems. The Company's software and intellectual property are licensed through long-term contracts.

B.    **Synopsys's False and Misleading Statements**

32.    On December 4, 2024, Synopsys issued a press release announcing the financial results for its fourth quarter and fiscal year ended October 31, 2024. The press release touted that the Company's financial results were driven by "continued strong execution" and that "[t]he combination of our execution focus, operating discipline, and the critical nature of our industry-leading technology positions us well for the future."

33.    On the same day, Synopsys hosted a call with investors and analysts to discuss the released financial results. During the call, Defendant Ghazi endorsed the Company's strong momentum and strategic focus, stating:

> We have strong momentum across the business supported by multiple secular growth drivers. We have a very resilient business model and are mission-critical to our customers' innovation. We are aligning our portfolio investment with the greatest return potential and aligning our operations to accelerate our growth.

34.    Defendant Ghazi described the Company's performance across different semiconductor markets, stating:

I like to think of it as we are in a tale of two markets, the one that our customers are serving, the AI infrastructure buildout. They're doing incredibly well, and we're benefiting beautifully out of it. These are the companies that they're delivering memory chips, advanced logics, be it CPU, accelerator, GPU, et cetera. And that's helping across the board the Synopsys portfolio, the EDA, hardware, IP, et cetera. But let's not forget there's another cohort, which is the rest of the semiconductor market, the one that they're serving mobile, PC, automotive, industrial. They're still in many ways, trying to have a refresh cycle for their products and leverage AI on devices. For us, for that cohort, given we're tied to their R&D, we're still doing fine, but it's not delivering to similar level of growth as the first cohort. So, that's from a market point of view.

35.    On December 19, 2024, Synopsys filed with the SEC a Form 10-K reporting the Company's financial results for the fiscal year ended October 31, 2024 (the "2024 10-K"). The 2024 10-K contained the following factors concerning the Company's business and operational risks:

Consolidation among our customers and within the industries in which we operate, as well as our dependence on a relatively small number of large customers, may negatively impact our operating results.

\*    \*    \*

Changes in demand for our products due to customers reducing their expenditures, which may be a result of customer cost-cutting measures or insolvency or bankruptcy, sustained global inflationary pressures and elevated interest rates or other reasons;

\*    \*    \*

We may not be successful in our AI initiatives, which could adversely affect our business, operating results or financial condition.

\*    \*    \*

Changes in the mix of our products sold, as increased sales of our products with lower gross margins, such as our hardware products, may reduce our overall margins;

\*    \*    \*

If we fail to optimize our EDA and IP solutions for use with major foundries' manufacturing processes or major IP providers' products, or if our access to such foundry processes or third-party IP products is hampered, then our solutions may become less desirable to our customers, resulting in an adverse effect on our business and financial condition.

36.   On January 16, 2025, at the 27th Annual Needham Growth Conference, Defendant Glaser highlighted how closely Synopsys works with its customers in its IP Business, stating: "when we think about our IP business and our hardware business, we are working shoulder to shoulder with our customers. So, you can think about us as being almost a member of the design team."

37.   On February 26, 2025, Synopsys filed with the SEC a Form 10-Q reporting the Company's financial results for the quarter ended January 31, 2025. The Form 10-Q was signed by Defendant Glaser and included certifications signed by Defendant Ghazi and Glaser pursuant to the Sarbanes-Oxley Act of 2002 (the "SOX Act"). The Form 10-Q contained essentially the same risk factors as in the 2024 10-K.

38.   On that same day, the Company hosted a call for analysts and investors to discuss the financial results for the first quarter of 2025. During the call, Defendant Ghazi emphasized the strength of the Company's IP, stating: "While IP revenue can fluctuate quarter-to-quarter, the opportunity set for IP continues to expand, particularly as AI customers accelerate protocol transitions and look for creative ways to drive enhanced performance per watt."

39.   Defendant Ghazi also described the Company's visibility into their customers, stating "as you can imagine, we are very intimate with every customer[], chips road map, investments, et cetera, and we track it very, very closely."

40.   Defendant Ghazi reassured investors that customer behavior had not changed, stating:

> There is definitely no change in terms of customer behavior. And as you know, Joe, the backlog, you build and burn the backlog. The EDA type of contracts, they are still on the same average duration. So we have not seen a big customer behavior change at all. On IP and hardware, as I mentioned in the tale of two markets remarks, that even though the contract may be committed by when the customer pulls it down varies based on the pace in which they are building these chips. So -- but there is no behavior change from customer or market point of view or anything differently we're driving in terms of extending durations with customers.

41. On May 28, 2025, Synopsys filed with the SEC a Form 10-Q reporting the Company's financial results for the quarter ended April 30, 2025. The Form 10-Q was signed by Defendant Glaser and included certifications signed by Defendant Ghazi and Glaser pursuant to the SOX Act. The Form 10-Q contained essentially the same risk factors as in the 2024 10-K.

42. On that same day, the Company hosted a call with analysts and investors to discuss the financial results for the second quarter of 2025. During that call, Defendant Ghazi was asked about the Company's relationship with its largest customer:

> Yes, I'm assuming you're talking about Intel in this case. As we have communicated again that Intel has a mix of EDA software, IP and hardware. These are multi-year committed agreements. And same as with other customers, as their road map may be fluctuating or there are some rethinking about the road map, it does not impact generally the EDA software. There might be some impact on hardware and IP pull down, even though those agreements are committed, non-cancelable, there might be quarter-over-quarter fluctuation, but that's really about it at this stage.

43. Defendant Ghazi trumpeted the strength of the Company's portfolio during the same call, stating:

> Now weaving into the next part of your question, that's due to the strength that we are seeing and have seen in other regions as well in the complete part of the portfolio. Recall, we announced our hardware systems. and very well received by our customers, strong momentum. And we have always planned the year in a 45-55 fashion, 45% the first half, 55% in the second half. And the reason the shape is that way is with the anticipation of a bigger second half as we continue on rolling out our hardware system and of course, having visibility over renewals and our IP demands and EDA software based on our knowledge and insights with customers' road map. And when you -- the point you made regarding Q1, Q2, we actually were at or above the midpoint of guidance. So there were no surprises. We delivered to exactly what we said we're going to deliver, and that's the expectation for the second half.

44. The foregoing statements were materially false and misleading, and failed to disclose materially adverse facts about the Company's business and operations. Specifically, the statements failed to disclose that: (1) the Company's

growing focus on AI customers who require more customization, was weakening its Design IP business; (2) as a result, certain of the Company's plans were not likely to achieve their intended outcomes; and (3) these issues were materially harming the Company's financial performance.

A.     **The Truth is Revealed**

45.     On September 9, 2025, the truth emerged about the negative effects of Synopsys' heightened focus on AI related projects and the operational problems within its Design IP business. On that day, Synopsys released its financial results for the third quarter of 2025 and acknowledged that the Company's "IP business underperformed expectations."

46.     During the call held with analysts and investors to discuss the released results, Defendant Ghazi disclosed that Design IP revenue had declined eight percent year-over-year and explained that the Company would need to redirect its IP resources and road map toward areas with stronger growth potential.

47.     Management further acknowledged that several anticipated IP deals had not materialized and that issues involving a major foundry customer had contributed to the shortfall, signaling to investors that earlier assurances about the strength of the Company's IP business had been misleading.

48.     On this news, Synopsys' stock price fell by 35.8 percent, dropping from $604.37 to $387.78 per share on September 9, 2025.

B.     **Defendants' Misconduct Has and Continues to Harm the Company**

49.     As a direct and proximate result of the Defendants' conduct, the Company has been harmed and will continue to be. The harm includes, but is not limited to, the costs already incurred and to be incurred defending the Company in the Securities Action, as well as costs to be incurred in remediating deficiencies in the Company's internal controls.

50.     Synopsys' reputation and goodwill have also been damaged by the Defendants' misconduct.

C.     **Synopsys Issues a False and Misleading Proxy Statement**

51.     In addition to the false and misleading statements discussed above, Defendants de Geus, Schwarz, Ghazi, Borgen, Chaffin, Chizen, Johnson, Painter, and Sargent also caused the Company to issue a false and misleading proxy statement during the Relevant Time Period, specifically the Schedule 14A Proxy Statements filed on February 14, 2025 (the "2025 Proxy"), that sought stockholder votes to, among other things, re-elect Defendants de Geus, Schwarz, Ghazi, Borgen, Chaffin, Chizen, Johnson, Painter, and Sargent to serve on the Board.

52.     Defendants de Geus, Schwarz, Ghazi, Borgen, Chaffin, Chizen, Johnson, Painter, and Sargent drafted, approved, reviewed, and/or signed the 2025 Proxy before they were filed with the SEC and disseminated to Synopsys's stockholders. Defendants de Geus, Schwarz, Ghazi, Borgen, Chaffin, Chizen, Johnson, Painter, and Sargent negligently issued materially misleading statements in the 2025 Proxy. These allegations are based solely on negligence, they are not based on any allegations of recklessness or knowing conduct by or on behalf of Defendants de Geus, Schwarz, Ghazi, Borgen, Chaffin, Chizen, Johnson, Painter, and Sargent and they do not allege or do not sound in fraud. Plaintiff specifically disclaims any allegations of, reliance upon any allegation of, or reference or any allegation of fraud, scienter, or recklessness with regard to the 2025 Proxy allegations and related claims.

53.     In support of re-electing themselves, Defendants de Geus, Schwarz, Ghazi, Borgen, Chaffin, Chizen, Johnson, Painter, and Sargent highlighted their supposed oversight of the Company in the 2025 Proxy. The 2025 Proxy stated:

> Our Board of Directors is responsible for the oversight of our company-wide risk management efforts but has delegated certain areas of risk oversight to each of our standing Board committees. Our Board of Directors and its committees are directly involved in and engage in

regular communications with management and external advisors regarding risk management issues, including, among other things, significant matters such as our business strategy, technological trends, such as artificial intelligence, major strategic transactions and senior management development and succession planning. In addition, Synopsys has an enterprise risk management (ERM) program that provides a company-wide perspective on a broad range of our compliance, strategic, operational and financial risks. The ERM program is overseen by a committee comprised of members of Synopsys' senior management and is led by Synopsys' General Counsel. The program identifies the most significant risks facing Synopsys, which are then reported to the Board on an annual basis. The members of management identified by the ERM program as responsible for the top risks also provide our Chief Executive Officer with quarterly updates on their efforts to manage and mitigate such risks.

54.    The 2025 Proxy thus assured stockholders that Defendants de Geus, Schwarz, Ghazi, Borgen, Chaffin, Chizen, Johnson, Painter, and Sargent understood Company-wide risks, actively oversaw the Company's risks and exposures, as well as steps taken to monitor and mitigate risk exposures. In reality, Defendants de Geus, Schwarz, Ghazi, Borgen, Chaffin, Chizen, Johnson, Painter, and Sargent were utterly failing in their oversight duties by allowing the Company to operate with inadequate internal controls which resulted in the failure to disclose or prevent the Defendants from causing the Company to make materially false and misleading statements above.

55.    As a result of these misleading statements, the Company's stockholders voted via an uninformed stockholder vote to re-elect Defendants de Geus, Schwarz, Ghazi, Borgen, Chaffin, Chizen, Johnson, Painter, and Sargent to the Board.

D.    **The Board Breached its Fiduciary Duties**

56.    As officers and/or directors of Synopsys, the Defendants owed Synopsys fiduciary duties of good faith, loyalty, and candor, and were and are required to use their utmost ability to control and manage Synopsys in a fair, just, honest and equitable manner. The conduct of the Director Defendants involves a knowing or reckless violation of their obligations as directors and officers of

Synopsys, the absence of good faith on their part, and a reckless disregard for their duties to the Company that Director Defendants were aware or should have been aware posed a risk of serious injury to the Company.

57.     Defendants, because of their positions of control and authority as directors and/or officers of Synopsys, were able to and did exercise control over the wrongful acts complained of herein. As officers and/or directors of a publicly-traded company, the Defendants had a duty to prevent the dissemination of inaccurate and untruthful information regarding Synopsys's financial condition, performance, growth, operations, financial statements, business, management, earnings, internal controls, and business prospects, so as to ensure that the market price of the Company's common stock would be based upon truthful and accurate information.

58.     To discharge their duties, the officers and directors of Synopsys were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors and Synopsys were required to, among other things:

(a)     Ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the Company's stockholders;

(b)     Conduct the affairs of the Company in a lawful, efficient, business-like manner to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)     Refrain from unduly benefiting themselves and other Company insiders at the expense of the Company;

(d)     Oversee public statements made by the Company's officers and employees as to the financial condition of the Company at any given time,

including ensuring that any statements about the Company's financial results and prospects are accurate, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

(e)    Remain informed as to how the Company conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state securities laws;

(f)    Maintain and implement an adequate and functioning system of internal controls to ensure that the Company complied with all applicable laws, rules, and regulations; and

(g)    Ensure that the Company is operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state, and local laws, rules and regulations.

59.    The conduct of the Defendants complained of herein involves a knowing and culpable violation of their obligations as officers and directors of the Company, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its stockholders, which the Defendants were aware, or should have been aware, posed a risk of serious injury to the Company.

60.    The Board's Audit Committee is tasked with overseeing Synopsys' financial reporting system and assisting the Board with its oversight of the adequacy and effectiveness of Synopsys' internal controls over financial reporting and its disclosure controls and procedures. Specifically, according to the Audit Committee's charter, the Audit Committee's responsibilities include:

- to act on behalf of the Board in fulfilling its financial oversight responsibilities relating to  the integrity of Synopsys' financial statements and accounting and financial reporting processes, Synopsys' systems of internal accounting and financial controls

and the performance of the internal audit services function, the compliance by Synopsys with legal and regulatory requirements that pertain to Synopsys' financial statements and systems of internal control over financial reporting, and Synopsys' disclosure controls and procedures, and the evaluation and management of risks associated with financial reporting, accounting, and auditing.

- to review and discuss with management the release of the annual and quarterly financial results.

- to review with management the results of the annual audit, including the assessment of the quality of accounting principles, the adequacy of the disclosures in the financial statements, any significant changes to Synopsys' accounting principles.

- review with management significant issues that arise regarding accounting principles and financial statement presentation, including the effect of new or proposed regulatory and accounting initiatives on Synopsys' financial statements and other public disclosures.

- review the information to be presented in earnings press releases prior to public release.

- periodically review with management, legal counsel and other advisors, as appropriate, any legal and regulatory matters that may have a material impact on Synopsys' financial statements.

61.     In violation of the Audit Committee Charter, and their general duties as members of the Audit Committee, Defendants Borgen, Sargent, and Johnson (the "Audit Committee Defendants") conducted little, if any, oversight of the Company's internal controls over financial reporting, resulting in materially false and misleading statements regarding the Company's business and consciously disregarded their duties to monitor such controls. The Audit Committee's complete failure to perform their duties in good faith resulted in misrepresentations to the public and the Company's stockholders.

62.     In addition, as officers and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act,

-16-
PLAINTIFF'S DERIVATIVE COMPLAINT

the Defendants had a duty not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, operations, financial statements, business, products, management, earnings, internal controls, and present and future business prospects, so that the market price of the Company's common stock would be based upon truthful and accurate information. Accordingly, the Defendants breached their fiduciary duties by knowingly or recklessly causing the Company to make false and misleading statements of material fact about the Company's maintaining adequate internal controls and compliance with applicable rules and regulations.

63.     The Defendants' flagrant violations of their fiduciary duties and unwillingness to heed the requirements of their Audit Committee Charter have inflicted, and will continue to inflict, significant harm on Synopsys.

## DERIVATIVE ALLEGATIONS

64.     Plaintiff brings this action derivatively in the right and for the benefit of Synopsys to redress injuries suffered by Synopsys as a direct result of the Director Defendants' breaches of fiduciary duty.  Synopsys is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

65.     Plaintiff will adequately and fairly represent the interests of Synopsys in enforcing and prosecuting the Company's rights.

66.     Plaintiff was a stockholder of Synopsys at the time of the wrongdoing complained of, has continuously been a stockholder since that time, and is currently a Synopsys stockholder.

## DEMAND FUTILITY ALLEGATIONS

67.     Plaintiff repeats, re-alleges, and incorporates by reference each and every allegations set forth as though fully set forth herein.

68.     The Synopsys Board currently has 11 members: Defendants de Geus, Schwarz, Ghazi, Borgen, Chaffin, Chizen, Johnson, Painter, Sargent, Gopal, and Vijayaraghavan.

69.     Plaintiff has not made any demand on Synopsys' current Board to institute this action against the Defendants, as any pre-suit demand would be excused. The Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

70.     The Director Defendants had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. In addition, the Director Defendants owed a duty to, in good faith and with due diligence, exercise reasonable inquiry, oversight, and supervision to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively), and to ensure that the Board's duties were being discharged in good faith and with the required diligence and due care.

71.     The Director Defendants' making or authorization of the false and misleading statements discussed above caused the Company's stock to trade at artificially inflated prices and misrepresented the financial health of Synopsys. The failure to timely correct such statements, failure to take necessary and appropriate steps to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively), and failure to take necessary and appropriate steps to ensure that the Board's duties were being discharged in good faith and with the required due diligence, constitute breaches of fiduciary duties that have resulted in the Director Defendants facing a substantial likelihood of liability. The Director Defendants could not fairly and fully prosecute this action or any other action concerning the misconduct described above.

**A.  Demand is Excused as to Defendant de Geus**

72. Defendant de Geus co-founded Synopsys in 1986 and led the company for more than 35 years, serving as CEO from 1994 to 2023.

73. Defendant de Geus is the Executive Chair of the Board, and as such is employed by the Company. According to the 2025 Proxy, Defendant de Geus received compensation of $8.9 million in 2024. Defendant de Geus depends on Synopsys for his income and cannot reasonably and objectively consider a demand to sue the Board that controls his continued compensation.

74. In addition, Synopsys stated in the 2025 Proxy that Defendant de Geus is not independent pursuant to applicable federal securities laws and Nasdaq Listing Standards.

75. As Executive Chair, Defendant de Geus had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant de Geus was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

76. Defendant de Geus failed to conduct oversight of the Company's internal controls over financial reporting or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Synopsys's controls, Defendant de Geus failed to protect corporate assets.

77. Defendant de Geus was an active participant in the misconduct described above. Defendant de Geus signed the 2024 10-K filed by the Company during the Relevant Time Period.

78. Defendant De Geus is also a named defendant in the Securities Action.

79. Thus, Defendant DeGeus faces a substantial likelihood of liability.

**B.    Demand is Excused as to Defendant Ghazi**

80.     Defendant Ghazi is the Company's CEO.  Defendant Ghazi received compensation of $27.4 million in 2024. Defendant Ghazi depends on Synopsys for his income. Defendant Ghazi cannot reasonably and objectively consider a demand to sue the Board that controls his continued compensation.

81.     In addition, Synopsys stated in the 2025 Proxy that Defendant Ghazi is not independent pursuant to applicable federal securities laws and Nasdaq Listing Standards.

82.     Additionally, Defendant Ghazi served as a director of the Company during the Relevant Time Period. As a director, Defendant Ghazi had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Ghazi was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

83.     Defendant Ghazi failed to conduct oversight of the Company's internal controls over financial reporting or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Synopsys's controls, Defendant Ghazi failed to protect corporate assets.

84.     Defendant Ghazi was an active participant in the misconduct described above. Defendant Ghazi signed the 2024 10-K filed during the Relevant Time Period. Defendant Ghazi therefore faces a substantial likelihood of liability.

85.     Defendant Ghazi is also a named defendant in the Securities Action.

86.     Thus, Defendant Ghazi faces a substantial likelihood of liability.

**C.     Demand is Excused as to Defendant Borgen**

87.     Defendant Borgen served as a director of the Company during the Relevant Time Period. As a director, Defendant Borgen had a duty to ensure that the Company's SEC filings, press releases, and other public statements and

presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Borgen was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

88.     Defendant Borgen failed to conduct oversight of the Company's internal controls over financial reporting or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Synopsys's controls, Defendant Borgen failed to protect corporate assets.

89.     According to the 2025 Proxy, Defendant Borgen received $339,798 in compensation in connection with his role as a Company director in 2024. Defendant Borgen is not otherwise employed. Accordingly, Defendant Borgen cannot reasonably and objectively consider a demand to sue the Board that controls his continued compensation.

90.     Defendant Borgen also served on the Audit Committee during the Relevant Time Period. The Audit Committee is responsible for reviewing the Company's financial results and system of internal controls over financial reporting. The Audit Committee was thus responsible for reviewing and approving Synopsys' Forms 10-Q and 10-K filed during the Relevant Period. Defendant Borgen was responsible for knowingly or recklessly allowing the false and misleading statements related to the Company's financial performance and outlook. In addition, Defendant Borgen knowingly or recklessly disregarded failures in the Company's internal controls. Accordingly, Defendant Borgen breached the fiduciary duty of loyalty and good faith by participating in the misconduct described above.

91.     Defendant Borgen was an active participant in the misconduct described above. Defendant Borgen signed the 2024 10-K filed during the Relevant Time Period. Defendant Borgen therefore faces a substantial likelihood of liability.

92.     Defendant Borgen is also a named defendant in the Securities Action.

93.     Thus. Defendant Borgan faces a substantial likelihood of liability for these breaches, making any demand on Defendant Borgan futile.

**D.     Demand is Excused as to Defendant Chaffin**

94.     Defendant Chaffin served as a director of the Company during the Relevant Time Period. As a director, Defendant Chaffin had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Chaffin was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

95.     Defendant Chaffin failed to conduct oversight of the Company's internal controls over financial reporting or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Synopsys's controls, Defendant Chaffin failed to protect corporate assets.

96.     According to the 2025 Proxy, Defendant Chaffin received $359,798 in compensation in connection with her role as a Company director in 2024. Defendant Chaffin is not otherwise employed. Accordingly, Defendant Chaffin cannot reasonably and objectively consider a demand to sue the Board that controls her continued compensation.

97.     Defendant Chaffin was an active participant in the misconduct described above. Defendant Chaffin signed the 2024 10-K filed during the Relevant Time Period. Defendant Chaffin therefore faces a substantial likelihood of liability.

98.     Defendant Chaffin is also a named defendant in the Securities Action.

99.     Thus, Defendant Chaffin faces a substantial likelihood of liability.

**E.     Demand is Excused as to Defendant Chizen**

100. Defendant Chizen served as a director of the Company during the Relevant Time Period. As a director, Defendant Chizen had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Chizen was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

101. Defendant Chizen failed to conduct oversight of the Company's internal controls over financial reporting or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Synopsys's controls, Defendant Chizen failed to protect corporate assets.

102. According to the 2025 Proxy, Defendant Chizen received $337,298 in compensation in connection with his role as a Company director in 2024. Accordingly, Defendant Chizenn cannot reasonably and objectively consider a demand to sue the Board that controls his continued compensation.

103. Defendant Chizen was an active participant in the misconduct described above. Defendant Chizen signed the 2024 10-K filed during the Relevant Time Period. Defendant Chizen therefore faces a substantial likelihood of liability.

104. Defendant Chizen is also a named defendant in the Securities Action.

105. Thus, Defendant Chizen faces a substantial likelihood of liability.

**F.    Demand is Excused as to Defendant Gopal**

106. Defendant Gopal served as a director of the Company during the Relevant Time Period. As a director, Defendant Gopal had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Gopal was also required to act in

good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

107. Defendant Gopal failed to conduct oversight of the Company's internal controls over financial reporting or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Synopsys's controls, Defendant Gopal failed to protect corporate assets.

108. Thus, Defendant Gopal faces a substantial likelihood of liability.

**G.    Demand is Excused as to Defendant Johnson**

109. Defendant Johnson served as a director of the Company during the Relevant Time Period. As a director, Defendant Johnson had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Johnson was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

110. Defendant Johnson failed to conduct oversight of the Company's internal controls over financial reporting or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Synopsys's controls, Defendant Johnson failed to protect corporate assets.

111. According to the 2025 Proxy, Defendant Johnson received $364,798 in compensation in connection with her role as a Company director in 2024. Defendant Johnson is not otherwise employed. Accordingly, Defendant Johnson cannot reasonably and objectively consider a demand to sue the Board that controls her continued compensation.

112. Defendant Johnson also served on the Audit Committee during the Relevant Time Period. The Audit Committee is responsible for reviewing the Company's financial results and system of internal controls over financial

reporting. The Audit Committee was thus responsible for reviewing and approving Synopsys' Forms 10-Q and 10-K filed during the Relevant Period. Defendant Johnson was responsible for knowingly or recklessly allowing the false and misleading statements related to the Company's financial performance and outlook. In addition, Defendant Johnson knowingly or recklessly disregarded failures in the Company's internal controls. Accordingly, Defendant Johnson breached the fiduciary duty of loyalty and good faith by participating in the misconduct described above.

113.    Defendant Johnson was an active participant in the misconduct described above. Defendant Johnson signed the 2024 10-K filed during the Relevant Time Period. Defendant Johnson therefore faces a substantial likelihood of liability.

114.    Defendant Johnson is also a named defendant in the Securities Action.

115.    Thus, Defendant Johnson faces a substantial likelihood of liability for these breaches, making any demand on Defendant Johnson futile.

## H.    Demand is Excused as to Defendant Painter

116.    Defendant Painter served as a director of the Company during the Relevant Time Period. As a director, Defendant Painter had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Painter was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

117.    Defendant Painter failed to conduct oversight of the Company's internal controls over financial reporting or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Synopsys's controls, Defendant Painter failed to protect corporate assets.

118. According to the 2025 Proxy, Defendant Painter received $334,798 in compensation in connection with his role as a Company director in 2024. Accordingly, Defendant Painter cannot reasonably and objectively consider a demand to sue the Board that controls his continued compensation.

119. Defendant Painter was an active participant in the misconduct described above. Defendant Painter signed the 2024 10-K filed during the Relevant Time Period. Defendant Painter therefore faces a substantial likelihood of liability.

120. Defendant Painter is also a named defendant in the Securities Action.

121. Thus, Defendant Painter faces a substantial likelihood of liability.

## I. Demand is Excused as to Defendant Sargent

122. Defendant Sargent served as a director of the Company during the Relevant Time Period. As a director, Defendant Sargent had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Sargent was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

123. Defendant Sargent failed to conduct oversight of the Company's internal controls over financial reporting or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Synopsys's controls, Defendant Sargent failed to protect corporate assets.

124. According to the 2025 Proxy, Defendant Sargent received $346,048 in compensation in connection with her role as a Company director in 2024. Accordingly, Defendant Sargent cannot reasonably and objectively consider a demand to sue the Board that controls her continued compensation.

125. Defendant Sargent also served on the Audit Committee during the Relevant Time Period. The Audit Committee is responsible for reviewing the

Company's financial results and system of internal controls over financial reporting. The Audit Committee was thus responsible for reviewing and approving Synopsys' Forms 10-Q and 10-K filed during the Relevant Period. Defendant Sargent was responsible for knowingly or recklessly allowing the false and misleading statements related to the Company's financial performance and outlook. In addition, Defendant Sargent knowingly or recklessly disregarded failures in the Company's internal controls. Accordingly, Defendant Sargent breached the fiduciary duty of loyalty and good faith by participating in the misconduct described above.

126. Defendant Sargent was an active participant in the misconduct described above. Defendant Sargent signed the 2024 10-K filed during the Relevant Time Period. Defendant Sargent therefore faces a substantial likelihood of liability.

127. Defendant Sargent is also a named defendant in the Securities Action.

128. Thus. Defendant Sargent faces a substantial likelihood of liability for these breaches, making any demand on Defendant Sargent futile.

**J.    Demand is Excused as to Defendant Schwarz**

129. Defendant Schwarz served as a director of the Company during the Relevant Time Period. As a director, Defendant Schwarz had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Schwarz was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

130. Defendant Schwarz failed to conduct oversight of the Company's internal controls over financial reporting or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Synopsys's controls, Defendant Schwarz failed to protect corporate assets.

131. According to the 2025 Proxy, Defendant Schwarz received $349,798 in compensation in connection with his role as a Company director in 2024. Accordingly, Defendant Schwarz cannot reasonably and objectively consider a demand to sue the Board that controls his continued compensation.

132. Defendant Schwarz was an active participant in the misconduct described above. Defendant Schwarz signed the 2024 10-K filed during the Relevant Time Period. Defendant Schwarz therefore faces a substantial likelihood of liability.

133. Defendant Schwarz is also a named defendant in the Securities Action.

134. Thus, Defendant Schwarz faces a substantial likelihood of liability.

**K.      Demand is Excused as to Defendant Vijayaraghavan**

135. Defendant Vijayaraghavan served as a director of the Company during the Relevant Time Period. As a director, Defendant Vijayaraghavan had a duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations concerning its business, operations, prospects, internal controls, and financial statements were accurate. Defendant Vijayaraghavan was also required to act in good faith and with due diligence to ensure that the Company's internal controls were sufficiently robust and effective (and/or were being implemented effectively).

136. Defendant Vijayaraghavan failed to conduct oversight of the Company's internal controls over financial reporting or the Company's statements to regulators, investors, and the public. By consciously disregarding the duty to monitor Synopsys's controls, Defendant Vijayaraghavan failed to protect corporate assets.

137. Thus, Defendant Vijayaraghavan faces a substantial likelihood of liability.

138.    Based on the facts alleged herein, there is a substantial likelihood that Plaintiff will be able to prove that these individuals breached their fiduciary duties by condoning the misconduct and failing to take meaningful action to remedy the resultant harm.

## CLAIMS FOR RELIEF

## COUNT I

### Breach of Fiduciary Duty

### (Derivatively Against The Director Defendants)

139.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

140.    Each of the Director Defendants owed and owes Synopsys the highest obligations of loyalty, good faith, due care, and oversight.

141.    Each of the Director Defendants violated and breached their fiduciary duties of loyalty, good faith, candor and oversight to the Company.

142.    The Director Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company. In breach of their fiduciary duties, the Director Defendants failed to maintain an adequate system of oversight, disclosure controls and procedures, and internal controls.

143.    In addition, the Director Defendants further breached their fiduciary duties owed to Synopsys by willfully or recklessly making and/or causing the Company to make false and misleading statements and omissions of material fact and allowing the Company to operate with inadequate internal controls which resulted in the misrepresentations and failure to disclose that: (1) the Company's growing focus on AI customers who require more customization, was weakening the economics of its Design IP business; (2) as a result, certain of the Company's

road map and resource choices were not likely to achieve their intended outcomes; (3) these issues were materially harming the Company's financial performance.

144. The Director Defendants failed to correct and cause the Company to fail to rectify any of the wrongs described herein or correct the false and misleading statements and omissions of material fact, exposing them to personal liability to the Company for breaching their fiduciary duties.

145. The Director Defendants had actual or constructive knowledge that they had caused the Company to improperly engage in the wrongdoing set forth herein and to fail to maintain adequate internal controls. The Director Defendants had actual knowledge that the Company was engaging in the wrongdoing set forth herein, and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to improperly engage in the wrongdoing and to fail to maintain adequate internal controls, even though such facts were available to them. Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities. The Director Defendants, in good faith, should have taken appropriate action to correct the schemes alleged herein and to prevent them from continuing to occur.

146. As a direct and proximate result of the breaches of duty alleged herein, Synopsys has sustained and will sustain significant damages.

147. As a result of the misconduct alleged herein, these Defendants are liable to the Company.

148. Plaintiff, on behalf of Synopys, has no adequate remedy at law.

## COUNT II

### Breach of Fiduciary Duty

### (Derivatively Against the Officer Defendants)

149. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

150. The Officer Defendants are executive officers of the Company. As executive officers, the Officer Defendants owed and owe Synopsys the highest obligations of loyalty, good faith, due care, oversight, and candor.

151. The Officer Defendants breached their fiduciary duties owed to Synopsys by willfully or recklessly making and/or causing the Company to make false and misleading statements and omissions of material fact, failing to disclose that: (1) the Company's growing focus on AI customers who require more customization, was weakening the economics of its Design IP business; (2) as a result, certain of the Company's road map and resource choices were not likely to achieve their intended outcomes; (3) these issues were materially harming the Company's financial performance.

152. . The Officer Defendants failed to correct and cause the Company to fail to rectify any of the wrongs described herein or correct the false and misleading statements and omissions of material fact.

153. As a direct and proximate result of the breaches of duty alleged herein, Synopsys has sustained and will sustain significant damages.

154. As a result of the misconduct alleged herein, the Officer Defendants are liable to the Company.

155. Plaintiff, on behalf of Synopsys, has no adequate remedy at law.

## COUNT III

### Gross Mismanagement

### (Derivatively Against All Defendants)

156. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

157. By their actions alleged herein, the Defendants abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of the Company in a manner consistent with the operations of a publicly held corporation

158. As a direct and proximate result of the Defendants' gross mismanagement and breaches of duty alleged herein, the Company has sustained significant damages.

159. As a direct and proximate result of the gross mismanagement and breaches of duty alleged herein, Synopsys has sustained and will sustain significant damages.

160. As a result of the misconduct alleged herein, the Defendants are liable to the Company.

161. Plaintiff, on behalf of Synopsys, has no adequate remedy at law.

## COUNT IV

### Waste of Corporate Assets

### (Derivatively Against All Defendants)

162. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

163. The wrongful conduct alleged regarding the issuance of false and misleading statements was continuous, connected, and on-going throughout the Relevant Time Period. It resulted in continuous, connected, and ongoing harm to the Company.

164. As a result of the misconduct described above, the Defendants wasted corporate assets by, inter alia: (i) paying excessive compensation and bonuses to certain of its executive officers; (ii) awarding self-interested stock options to certain officers and directors; and (iii) incurring potentially millions of dollars of legal liability and/or legal costs to defend Defendants' unlawful actions.

165.   As a direct and proximate result of the waste of corporate assets and breaches of duty alleged herein, Synopsys has sustained significant damages.

166.   As a result of the misconduct alleged herein, the Defendants are liable to the Company.

167.   Plaintiff, on behalf of Synopsys, has no adequate remedy at law.

## COUNT V

## Unjust Enrichment

## (Derivatively Against the Officer Defendants)

168.   Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

169.   By their wrongful acts, violations of law, and false or misleading statements or omissions of material fact that they caused to be made, the Defendants were unjustly enriched at the expense of, and the detriment of, the Company.

170.   The Defendants either benefitted financially from the improper conduct, or received bonuses, stock options, or similar compensation from the Company that was tied to the performance of the Company or its stock price, or received compensation or other payments that were unjust in light of the Defendants' bad faith conduct.

171.   Plaintiff, on behalf of Synopsys, seeks restitution from the Defendants and seeks an order from this Court disgorging all profits, including from insider transactions, the redemption of preferred stock, benefits, and other compensation, including any performance-based or valuation based compensation, obtained by the Defendants due to their wrongful conduct and breach of their fiduciary duties.

## COUNT VI

## Violation of Section 14(a) of the Exchange Act

## (Derivatively Against The Director Defendants)

172.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

173.    The section 14(a) Exchange Act claims alleged herein are based solely on negligence. They are not based on any allegation of reckless or knowing conduct by or on behalf of the Director Defendants. The section 14(a) Exchange Act claims detailed herein do not allege and do not sound in fraud. Plaintiff specifically disclaims any allegation of, reliance upon any allegation of, or reference to any allegation of fraud, scienter, or recklessness with regard to the nonfraud claims.

174.    The Director Defendants negligently issued, caused to be issued, and participated in the issuance of materially misleading written statements to stockholders which were contained in the 2025 Proxy. In the 2025 Proxy, the Board solicited stockholder votes to reelect the Director Defendants to the Board.

175.    The 2025 Proxy, however, misrepresented and failed to disclose the Board's risk oversight and the Company's inadequate internal controls, which facilitated the illegal behavior described herein. By reasons of the conduct alleged herein, the Director Defendants violated section 14(a) of the Exchange Act. As a direct and proximate result of these defendants' wrongful conduct, Synopsys misled and deceived its stockholders by making materially misleading statements that were essential links in stockholders following the Company's recommendation and voting to reelect the Director Defendants.

176.    Plaintiff, on behalf of Synopsys, thereby seeks relief for damages inflicted upon the Company based upon the misleading 2025 Proxy in connection with the improper reelection of the Director Defendants to the Board.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands judgment as follows:

A.    Declaring that Plaintiff may maintain this derivative action on behalf of Synopsys and that Plaintiff is a proper and adequate representative of the

Company;

B.    Against all of the Defendants and in favor of Synopsys for the amount of damages sustained by the Company as a result of the acts and transactions complained of herein;

C.    Granting appropriate equitable relief to remedy the Defendants' breaches of fiduciary duties, including, but not limited to the institution of appropriate corporate governance measures;

D.    Awarding Synopsys restitution from Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by Defendants;

E.    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F.    Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  December 22, 2025    Respectfully Submitted,

By:   /s/ Francis J. "Casey" Flynn, Jr.
Francis J. "Casey" Flynn, Jr., #304712
**LAW OFFICE OF FRANCIS J. FLYNN, JR.**
6057 Metropolitan Plz
Los Angeles, CA 90036
Tele: 314-662-2836
Email: casey@lawofficeflynn.com

Shane T. Rowley, Esq.*
Danielle Rowland Lindahl, Esq.*
**ROWLEY LAW PLLC**
50 Main Street, Suite 1000
White Plains, New York 10606

Phone: (914) 400-1920
Fax: (914) 301-3514
Email:      srowley@rowleylawpllc.com
            drl@rowleylawpllc.com

* Pro hac vice applications forthcoming

**ATTORNEYS FOR PLAINTIFFS**

PLAINTIFF'S DERIVATIVE COMPLAINT